FILED by SW D.C. ELECTRONIC

Jul 13 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 04-22517-CIV-SEITZ/BANDSTRA

HALBERSTEIN INVESTMENT, LTD.,
METROWEST CENTER, LTD.,
CLERMONT CENTER, LTD., and
KIRKMAN CENTER, LTD., individually
and on behalf of all others similarly situated,

    Plaintiffs,

v.

LEHMAN BROTHERS INC., LEHMAN
ABS CORP., BANC OF AMERICA
SECURITIES LLC and J.J.B. HILLIARD,
W.L. LYONS, INC.,

    Defendants.

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THEIR MOTION TO DISMISS THE AMENDED CLASS ACTION
COMPLAINT WITH PREJUDICE**

    Stanley H. Wakshlag, Florida Bar No. 266264
    Brian P. Miller, Florida Bar No. 0980633
    Samantha J. Kavanaugh, Florida Bar No. 0194662
    AKERMAN SENTERFITT
    One Southeast Third Avenue
    Miami, Florida  33131
    (305) 374-5600

    James E. Brandt, *pro hac vice*
    Jeff G. Hammel, *pro hac vice*
    LATHAM & WATKINS LLP
    885 Third Avenue
    New York, New York  10022
    (212) 906-1200

    *Attorneys for Defendants*

July 13, 2005

**Table of Contents**

Table of Authorities ............................................................................................................... ii

Preliminary Statement ............................................................................................................1

Argument .................................................................................................................................2

I.     PLAINTIFFS LACK STANDING ...............................................................................2

II.    THE ALLEGATION THAT DEFENDANTS OMITTED THE "MAGNITUDE" OF THE RISK THAT GEGI WOULD CEASE SEC FILING SUPPORTS NO CLAIM ............................................................................................................................3

      A.    Defendants Had No Duty To Disclose The "Magnitude" Of GEGI's Risk ............3

      B.    The Omission Of The "Magnitude" Of GEGI's Risk Was Immaterial ...................6

III.   THE ALLEGATION THAT DEFENDANTS OMITTED THE "VIRTUAL INEVITABILITY" OF A LOSS SUPPORTS NO CLAIM .................................................8

IV.  DISMISSAL SHOULD BE WITH PREJUDICE .............................................................10

Conclusion ..............................................................................................................................10

i

## Table of Authorities

**Case Law**   **Page**

*Associated Builders, Inc. v. Alabama Power Co.*,
   505 F.2d 97 (5th Cir. 1974) ...................................................................................6

*Castlerock Mgt. Ltd. v. Ultralife Batteries, Inc.*,
   114 F. Supp. 2d 316 (D.N.J. 2000) ......................................................................4, 10

*Davila v. Delta Airlines, Inc.*,
   326 F.3d 1183 (11th Cir. 2003) ..............................................................................5

*DeMaria v. Andersen*,
   318 F.3d 170 (2d Cir. 2003)....................................................................................8, 9

*Harris v. Ivax*,
   182 F.3d 799 (11th Cir. 1999) ................................................................................7

*In re Initial Public Offering Sec. Litig.*,
   241 F. Supp. 2d 281 (S.D.N.Y. 2003).....................................................................4

*In re JPMorgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005).....................................................................5

*L.L. Capital Ptrs., L.P. v. Rockefeller Ctr. Props.*,
   921 F. Supp. 1174 (S.D.N.Y. 1996)........................................................................5

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   272 F. Supp. 2d 243 (S.D.N.Y. 2003).....................................................................5

*Miller v. New America High Income Fund*,
   755 F. Supp. 2d 1099 (D. Mass. 1991) ...................................................................5

*Olkey v. Hyperion 1999 Term Trust*,
   98 F.3d 2 (2d Cir. 1997)...................................................................................6, 7, 8

*Oxford Asset Mgt. v. Jaharis*,
   297 F.3d 1182 (11th Cir. 2002) .......................................................................3, 4, 6

*Rhodes v. Omega Research, Inc.*,
   38 F. Supp. 2d 1353 (S.D. Fla. 1999) .....................................................................8

*Rudd v. Suburban Lodges of America, Inc.*,
   67 F. Supp. 2d 1366 (N.D. Ga. 1999) .....................................................................4

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998).................................................................................................2

*Taam Assoc., Inc. v. Housecall Medical Resources, Inc.*,
    1:96-C 1998 WL 1745361 (N.D. Ga. Mar. 30, 1998) ...............................................3, 4, 9

*In re Ultrafem, Inc. Sec. Litig.*,
    91 F. Supp. 2d 678 (S.D.N.Y. 2000)......................................................................................5

*In re Union Carbide Class Action Sec. Litig.*,
    648 F. Supp. 1322 (S.D.N.Y. 1986).......................................................................................9

*In re Verifone Sec. Litig.*,
    11 F.3d 865 (9th Cir. 1993) ...................................................................................................5

*In re WorldCom, Inc. Sec. Litig.*,
    303 F. Supp. 2d 385 (S.D.N.Y. 2004)................................................................................7, 8

*Ziemba v. Cascade Int'l, Inc.*,
    256 F.3d 1194 (11th Cir. 2001) .............................................................................................3

**Statutes, Rules & Regulations**

Section 11 of the Securities Act of 1933, Civil Liabilities on Account
    of False Registration Statement, 15 U.S.C. § 77k ................................................................9

Section 12 of the Securities Act of 1933, Civil Liabilities Arising
    With Prospectuses and Communications, 15 U.S.C. § 77l...................................................9

Asset-Backed Securities, 70 Fed. Reg. 1506 (Jan. 7, 2005) ..............................................................6

**Other Authority**

Asset-Backed Securities, 69 Fed. Reg. 26650 (May 13, 2004) ........................................................6

Morgan Stanley & Co., Inc. No Action Letter,
    1996 WL. 347869 (June 24, 1996) .......................................................................................6

iii

**Preliminary Statement**

The core problem with the Amended Complaint, which is not and cannot be cured by plaintiffs' opposition papers, is that it does not allege that defendants omitted the sort of information that the securities laws require to be disclosed.  There is no duty to disclose information about unaffiliated companies, especially when defendants had no access to it, or to make inferential or speculative disclosures.  Rather than dispute (or even address) many of these arguments in defendants' opening brief, and conceding that the Prospectus Supplement disclosed the risk that GEGI could cease SEC filings, plaintiffs now offer two revised theories:  that defendants omitted (i) the "magnitude" of that risk, and (ii) the "virtual inevitability" that holders of "Class A-1" CBTCs would lose money if GEGI ceased SEC filings because they would share with holders of "Class A-2" CBTCs the proceeds from liquidating the trust containing the GEGI bonds.  These theories fail.

As a threshold matter, plaintiffs' claims should be dismissed for lack of standing.  They have not pled facts establishing an injury caused by defendants, as opposed to market forces.

Moreover, neither the "magnitude" nor the "virtual inevitability" theory states a claim.  The magnitude theory presumes that defendants should have drawn inferences and disclosed speculative contingencies about an unaffiliated company (the potential impact the Sarbanes-Oxley Act might have on GEGI's SEC filing status), which is neither practical nor required by law.  If anyone could have made such a disclosure, it was GEGI, and it did not.  This omission was also immaterial as a matter of law because the Prospectus Supplement disclaims any disclosures about GEGI (and thus no reasonable investor could look to it for such disclosures).

Nor can liability be based on the non-disclosure of the "virtual inevitability" of a loss by investors in Class A-1 CBTCs because the Prospectus Supplement in fact disclosed what plaintiffs assert was omitted (that the two classes of CBTCs would share in the proceeds from any liquidation), and plaintiffs have, in any event, failed to plead the elements of such a claim.

1

**Argument**

I.  **PLAINTIFFS LACK STANDING**

Defendants' opening brief establishes (at 8-9) that plaintiffs lack constitutional standing to bring this case because they suffered no "injury in fact" attributable to defendants. According to their own allegations, when the CBTCs were terminated, plaintiffs elected to receive their portion of the underlying GEGI bonds. (¶¶ 40, 41.) As a result, they continue to hold the same interests in the same bonds as before the CBTCs were terminated (and in fact enjoy $4,500 more interest per year than they did previously), and any decline in value of the bonds (which plaintiffs have not, and may never, incur until they sell the bonds) is attributable to market factors like interest rates and GEGI's credit rating, not to defendants. In opposition, plaintiffs label defendants' standing argument "spurious," but make no real attempt to refute these points.

Instead, they contend (at 9) that defendants received their fees at the outset of the transaction, something which not only was disclosed (Ex. 2, at 8; Ex. 3, at 1), but which also is not alleged to (and could not) have had anything at all to do with the CBTCs' termination, the event plaintiffs contend caused their loss.[1] Moreover, in asserting (at 19) their "standing in the context of the '33 Act," plaintiffs mistake constitutional standing for statutory standing, and do not cure their lack of the former. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 (1998) (statutory standing "has nothing to do with" constitutional standing). Dismissal is warranted for this reason alone.

---

[1] Plaintiffs assert that it is "clear from the [Amended] Complaint that Plaintiffs' damages are not reliant upon the movement of interests rates" (Pl. Mem. at 8), but the complaint contains no such allegation. Nor does the fact that the Class A-2 investors recovered a portion of their investment mean that plaintiffs were harmed because, as explained below, that sharing arrangement was fully disclosed to plaintiffs at the time of their investment.

2

## II. THE ALLEGATION THAT DEFENDANTS OMITTED THE "MAGNITUDE" OF THE RISK THAT GEGI WOULD CEASE SEC FILING SUPPORTS NO CLAIM

### A. Defendants Had No Duty To Disclose The "Magnitude" Of GEGI's Risk

"[A] corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact." *Taam Assoc., Inc. v. Housecall Medical Resources, Inc.*, 1:96-CV-2214A, 1998 WL 1745361, at *6 (N.D. Ga. Mar. 30, 1998) (citations omitted). Rather, an omission of material information is actionable only if there was a duty to disclose it. *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1206 (11th Cir. 2001). The Eleventh Circuit has squarely held that there is *no* "duty to disclose, in [a] prospectus, *all* information material to the offering [of securities]," and that this "duty question is properly stated as 'whether defendants had a *specific obligation* to disclose information of the type that plaintiffs claim was omitted from the registration statement and prospectus.'" *Oxford Asset Mgt. v. Jaharis,* 297 F.3d 1182, 1190 (11th Cir. 2002) (initial emphasis in original). As defendants' opening brief demonstrates (at 15-19), no such obligation requires disclosure of information about unaffiliated third parties or forecasts of future events. Indeed, the SEC has issued formal rules expressly stating that CBTC offerings need *not* undertake the "impractical" effort of disclosing information about the unrelated entity whose securities underlie the CBTCs. (Def. Mem. at 5-6.)

Plaintiffs challenge none of these principles. Instead, they seek to recast their allegations in an effort to avoid the result—dismissal—that these principles dictate. Plaintiffs assert that they "do not contend that [defendants] had any duty to predict," but rather that defendants had a duty to disclose "the magnitude of a risk existing when the Prospectus [Supplement] was issued," and that they do not contend that defendants omitted a disclosure about GEGI, but rather that defendants failed to disclose "a defect in the [CBTCs] themselves." (Pl. Mem. at 15-16.) These attempted distinctions, which plaintiffs concede (at 14) are "sometimes subtle and confusing," do not save their claims.

3

*First*, the *only* way for defendants to have disclosed the "magnitude" of the risk of an SEC Reporting Failure was to disclose information about *GEGI's* contingencies and internal decision-making. Plaintiffs effectively concede this. The Amended Complaint alleges the omission of the "risk that the issuer of the underlying securities [GEGI] would terminate its filing status with the SEC" (¶ 2), and their brief (at 1, 5) describes their allegation as of the non-disclosure of what "might motivate" GEGI to cease SEC reporting or why "[GEGI] would choose to" do so. Nothing requires such disclosure of non-public information about an unrelated company, especially where defendants had no access to that information. *See Rudd v. Suburban Lodges of America, Inc.*, 67 F. Supp. 2d 1366, 1373-74 (N.D. Ga. 1999) (dismissing Section 11 and 12 claims where information "was not and could not" have been disclosed); *Castlerock Mgt. Ltd. v. Ultralife Batteries, Inc.*, 114 F. Supp. 2d 316, 323 (D.N.J. 2000) (plaintiffs must "demonstrate that the allegedly omitted facts both existed, and were known or knowable, at the time of the offering"). Plaintiffs cite no contrary authority.[2]

*Second*, the purported omission—the "magnitude" of a risk faced by GEGI—simply is not "information of the type" that defendants "had a specific obligation to disclose." *See Oxford Asset Mgt.*, 297 F.3d at 1190. Plaintiffs contend (at 13, 15) that, based on two generic public facts (that GEGI was a subsidiary of a public company and that the Sarbanes-Oxley Act imposes costs on all such companies), defendants somehow should have divined that GEGI had some peculiarly high risk of ceasing SEC filings. This is, at best, a purely speculative inference, and is not a "fact" the securities laws required to be disclosed. *See, e.g., Taam*, 1998 WL 1745361, at *6 (dismissing as "nothing more than an allegation of failing to disclose a . . . forecast" the

---

[2] The cases plaintiffs cite (at 14-15) to support their "magnitude" theory are inapposite. None creates a duty to make disclosures about unrelated third parties. The cases merely stand for the unremarkable proposition that a company may, in certain contexts, have a duty to disclose *known* risks about *itself* or entities to which it has a special relationship and access, neither of which describes the situation here. Plaintiffs' reliance (at 14 n.8) on *In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003), is particularly in error, as that case explicitly notes that no liability can be based on the non-disclosure of facts that "could not have been known." *Id.* at 343.

4

allegation "that defendants should have realized and disclosed that [defendant company] would not be able to operate under Medicare cost caps in the future due to the cancellation of [a] contract").[3] Indeed, thousands of other subsidiaries of public companies (including of General Electric Company, GEGI's parent) were and are subject to the Sarbanes-Oxley Act, and the vast majority have not ceased SEC filings (and plaintiffs point to none that have). There was therefore no basis for defendants, privy to no inside information, to single out GEGI for an inference of such a risk.[4]

*Third*, the general facts that plaintiffs contend should have formed the basis of such guesswork and were also omitted—that GEGI is a subsidiary of a public company and that the Sarbanes-Oxley Act imposes new requirements on public companies—were *public information*. "Sections 11 and 12(a)(2) do not require the disclosure of publicly available information." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 249-50 (S.D.N.Y. 2003).[5] Plaintiffs' "magnitude" theory simply supports no claim.

A contrary holding by this Court would reject established principles of law and overturn the formal SEC regulatory framework applicable to these CBTCs. It would create new law leading to the extraordinary and unworkable result of forcing financial institutions and others to

---

[3] *Accord In re Verifone Sec. Litig.*, 11 F.3d 865, 869 (9th Cir. 1993) (no duty "to disclose the 'fact' that future prospects may not be as bright as past performance"); *In re Ultrafem, Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 701-02 (S.D.N.Y. 2000) (no "obligat[ion] to characterize" facts in a negative light); *L.L. Capital Ptrs., L.P. v. Rockefeller Ctr. Props.*, 921 F. Supp. 1174, 1180 (S.D.N.Y. 1996) (no duty to disclose "opinions," "predictions and speculations," as they are not "material fact[s] . . . necessary to make the Registration Statement not misleading").

[4] Contrary to plaintiffs' assertions (at 14), such "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Airlines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Similarly, defendants' status as financial institutions does not warrant the bald assumption, on the basis of no pled facts, that they "knew or should have known" the magnitude of the risk that GEGI would cease SEC filings. *See, e.g., In re JPMorgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) (dismissing Section 11 claim where no "facts" were pled "demonstrating [that] the defendant [financial institution] *possessed* the omitted information"). Plaintiffs' reliance (at 14 n.8) on *Miller v. New America High Income Fund*, 755 F. Supp. 2d 1099 (D. Mass. 1991), for this position is misplaced because there, unlike here, there were express allegations that the financial institution defendants were "direct . . . and substantial participants" in a fraud, and thus had access to the non-disclosed information. *Id.* at 1101. Here, defendants had access only to public information.

[5] To the extent that plaintiffs contend (at 18) that defendants omitted that GEGI may have had less than 300 note holders, that fails for the same reasons; it is a disclosure of non-public information about GEGI.

5

make speculative (and erroneous) predictive disclosures about contingencies faced by other companies—companies that are subject to their own disclosure duties and are far better positioned to make disclosures about themselves. *See Oxford Asset Mgt.*, 297 F.3d at 1190 (unnecessary disclosure would "bury[] the 'shareholders in an avalanche of trivial information—a result that is hardly conducive to informed decision-making'") (citation omitted).[6]

### B. The Omission Of The "Magnitude" Of GEGI's Risk Was Immaterial

Not only were defendants under no duty to disclose the "magnitude" of a risk faced by GEGI, but they expressly informed the marketplace that they were making *no* representations about GEGI at all. As a result, no reasonable investor could have looked to the Prospectus Supplement for that information, rendering its omission immaterial as a matter of law.

Plaintiffs acknowledge (at 11) that the determination of whether a prospectus is materially misleading "does not focus on whether particular statements, taken separately, were literally true, but [on] whether defendants' representations, taken as a whole, would have [misled] a reasonable investor about the nature of the [securities]." *Olkey v. Hyperion 1999 Term Trust*, 98 F.3d 2, 5 (2d Cir. 1997). Contrary to plaintiffs' assertions, however, this materiality assessment, which requires merely the reading of the text of a prospectus, is routinely made as a matter of law on a motion to dismiss (and doing so has been affirmed by both the Eleventh Circuit and its predecessor). *See Oxford Asset Mgt.*, 297 F.3d at 1193 (affirming dismissal where prospectus was "not misleading"); *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 101 (5th Cir. 1974) (Wisdom, J.) (same).[7] Such dismissal is appropriate here.

---

[6] Plaintiffs assert (at 8) that the SEC's guidance in the Morgan Stanley & Co., Inc. No Action Letter, 1996 WL 347869 (June 24, 1996), does not apply here because, they argue, it applies only to "equity securities," not debt securities like those underlying the CBTCs here. This is mistaken. While that letter involved equity securities, there is nothing in the letter that confines its guidance to such securities, and no principled reason to do so—as manifested in the formal rules issued by the SEC, which contain no such empty distinction and expressly cite "corporate *debt* securities" as "a common example" of such transactions. *See* Asset-Backed Securities, 70 Fed. Reg. 1506, 1552-53 (Jan. 7, 2005) (emphasis added); Asset-Backed Securities, 69 Fed. Reg. 26650, 26682 (May 13, 2004).

[7] Plaintiffs assert (at 16-18) that the "bespeaks caution doctrine," which also renders immaterial statements accompanied by cautionary disclosures, does not apply here because it protects only "forward-looking statements"

(continue)

6

The Prospectus Supplement plainly cautions, among other things, that:

- GEGI could in the future cease filing reports with the SEC and the consequences of such an event, including a loss to investors (Ex. 3, at S-11, S-17);
- defendants had access only to public information about GEGI, conducted no due diligence and provided no information regarding GEGI (*id.* S-6, S-10, S-13);
- it was "strongly recommended" that investors undertake their own inquiry directly into GEGI and "consider and evaluate" that information themselves (*id.* at S-10);
- defendants made no endorsement of or representations concerning GEGI's disclosures or business (*id.* at S-6, S-13); and
- there was no assurance that events affecting GEGI's business have not or will not occur in the future or have not yet been publicly disclosed by GEGI (*id.* at S-13).

There is only one way to read these disclosures: to understand that GEGI could cease its SEC filings at any time, that such an event could cause investors to lose money, that defendants undertook no due diligence and made no representations about GEGI, and that investors should independently evaluate an investment in the CBTCs by examining GEGI's disclosures directly.

Nevertheless, plaintiffs ask the Court to accept the notion that a reasonable investor could have read the Prospectus Supplement and have concluded that it was the appropriate place to look for information concerning the current and potential future SEC filing status of GEGI, and that such an investor could somehow have been misled by not finding that information in them. That reading is entirely implausible. It requires either that these disclosures be ignored altogether or that their words be deprived of any meaning. Neither is appropriate. Indeed, plaintiffs can offer no explanation for how a reasonable investor could disregard these disclosures yet somehow find important a disclosure of the estimated "magnitude" of the risk of an SEC Reporting Failure. *See Olkey*, 98 F.3d at 8 (plaintiffs "conveniently dismiss . . . anything in the prospectuses that undermines their argument" that they were misled). Plaintiffs' claims should be dismissed, as it was on these grounds in *In re WorldCom, Inc. Sec. Litig.*, 303 F. Supp.

---

and, they assert, the omissions here are of "present risks" rather than of future predictions. This assertion is without merit. The "magnitude" of the possibility that GEGI could cease SEC filings is squarely within the Eleventh Circuit's definition of a forward-looking statement—"a statement . . . whose truth or falsity is discernible only after it is made." *Harris v. Ivax*, 182 F.3d 799, 805 (11th Cir. 1999).

7

2d 385 (S.D.N.Y. 2004), involving virtually identical allegations and securities. *See id.* at 387-90;[8] *accord Olkey*, 98 F.3d at 8 (dismissing Section 11 and 12(a)(2) claims because "[a] reasonable investor could not have read the prospectus without realizing" risks of investment); *DeMaria v. Andersen*, 318 F.3d 170, 180-81 (2d Cir. 2003) (affirming dismissal of Section 11 and 12 claims where prospectus did not mislead as to the "true nature" of the securities); *Rhodes v. Omega Research, Inc.*, 38 F. Supp. 2d 1353, 1363-64 (S.D. Fla. 1999) (dismissing Section 11 and 12(a)(2) claims where "no reasonable investor could have been misled").

### III.   THE ALLEGATION THAT DEFENDANTS OMITTED THE "VIRTUAL INEVITABILITY" OF A LOSS SUPPORTS NO CLAIM

Plaintiffs assert (at 13) that defendants did not disclose the "virtually inevitability" that investors in Class A-1 CBTCs (who held an interest in both the principal and interest payments of the underlying GEGI debt) would lose money because the proceeds from liquidation would be shared with Class A-2 CBTC holders (who held an interest in only the GEGI debt's interest payments). This argument, an afterthought not articulated in the complaint, is without merit.

*First*, plaintiffs are wrong about the disclosures. The Prospectus Supplement expressly informed investors that, in the event of an SEC Reporting Failure by GEGI, "funds received by the Trust will be allocated to the holders of the Class A-1 Certificates and the Class A-2 Certificates in accordance with a formula that is based on the present value of the amounts due, or to become due on such Certificates" and that "such allocation of funds may cause the holders of the Class A-1 Certificates to receive less than they would have received if payments on the Underlying Securities were made as scheduled." (Ex. 3, at S-11.) It further disclosed (in portions not quoted by plaintiffs) that funds would be distributed:

---

[8] Plaintiffs go to such lengths to distinguish *WorldCom* that (at 16) they make an argument wholly at odds with their allegations—that their "claims and the offending omissions have nothing to do with the business or financial condition of [GEGI]." Their entire case is predicated on the "reorganized business" and "streamlin[ing]" of GEGI, and the cost-savings intended to be realized from ceasing its SEC filings. (¶¶ 29, 36.)

8

> [i]n the following order of priority: (1) to the Trustee, reimbursement for any extraordinary expenses in accordance with the Trust Agreement pursuant to instructions of not less than 100% of the certificateholders; and (2) *any remainder shall be allocated to the holders of the Class A-1 Certificates and the Class A-2 Certificates in accordance with the ration of the Class A-1 Allocation to the Class A-2 Allocation.*

(*Id.* at S-17 (emphasis added).) The "Class A-1 Allocation" and "Class A-2 Allocation" are defined, for both the Class A-1 and Class A-2 CBTCs, as "the present values" of "any unpaid interest due or to become due on the certificates," and, for the Class A-1 CBTCs, as also including "any unpaid principal amount of the Certificates." (*Id.* at S-16.)

It was therefore no secret that both the Class A-1 and Class A-2 CBTC-holders would, upon an SEC Reporting Failure, each receive the present value share of their unpaid investment. *See DeMaria*, 318 F.3d at 180-81 (affirming dismissal where alleged omission was disclosed). Although plaintiffs intimate that there was something improper with this sharing, without it, the Class A-2 holders would recover nothing. Plaintiffs suggest no reason why that should be so. Also, because the present value of the underlying GEGI debt (as with all bonds) is set by prevailing interest rates, the existence and extent of any loss (or gain) to Class A-1 holders is predicated on the interest rate environment at that time. Defendants certainly could not predict at the outset of the transaction that plaintiffs would "virtually inevitably" lose money if GEGI ceased SEC filings (and were plainly under no duty to try to do so, as discussed above).

*Second*, plaintiffs have not pled a claim based on this new theory. Where, as here, Section 11 and 12(a)(2) claims are based on the omission of a material fact "necessary to make the statements . . . not misleading," 15 U.S.C. §§ 77k(a), 77l(a)(2), "a threshold requirement is the presence of an affirmative statement that is made misleading by the material omission." *In re Union Carbide Class Action Sec. Litig.*, 648 F. Supp. 1322, 1325 (S.D.N.Y. 1986); *Taam*, 1996 WL 1745361, at *8. The "fail[ure] to identify any statements that were made misleading by reason of any of the alleged omissions" is fatal. *Union Carbide*, 648 F. Supp. at 1325; *id.*

9

(asserting "vaguely that a false and misleading impression was created" is not sufficient); *Castlerock*, 114 F. Supp. 2d at 323-24. Here, plaintiffs merely assert that the supposed "virtual inevitability" of a loss was not disclosed, but allege no statement made misleading as a result.[9]

### IV.  DISMISSAL SHOULD BE WITH PREJUDICE

After filing two complaints stating no claims, plaintiffs are not entitled to another bite at the apple. Plaintiffs offer nothing to dispute this. Dismissal should be with prejudice.

### Conclusion

Defendants request that the Amended Complaint be dismissed with prejudice.

Dated:   July 13, 2005                    Respectfully submitted,

        **AKERMAN SENTERFITT**
        One Southeast Third Avenue, 28th Floor
        Miami, Florida  33131
        Tel: 305-374-5600
        Fax: 305-374-5095

        By:  /s/ Samantha J. Kavanaugh
            Stanley H. Wakshlag, Esq.
            Florida Bar No. 266264
            Brian P. Miller, Esq.
            Florida Bar No. 0572233
            Samantha J. Kavanaugh, Esq.
            Florida Bar No. 0194662

        James E. Brandt, Esq., *pro hac vice*
        Jeff G. Hammel, Esq., *pro hac vice*
        **LATHAM & WATKINS LLP**
        885 Third Avenue, Suite 1000
        New York, NY 10022-4802
        Telephone:    212-906-1200
        Facsimile:    212-751-4864

        **Attorneys for Defendants**

---

[9] Plaintiffs do not dispute that a Section 15 claim must be dismissed where no primary violation of Section 11 is alleged. The Section 15 claims should thus be dismissed here.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by U.S. Mail on this 13th day of July, 2005, on:

Jeffrey M. Herman, Esq.
Stuart S. Mermelstein, Esq.
Herman & Mermelstein, P.A.
18205 Biscayne Boulevard, Suite 2218
Miami, Florida  33160
Tel:  305-931-2200
Fax:  305-931-0877

**Attorneys for Plaintiffs**

  /s/ Samantha J. Kavanaugh
Attorney